UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| Robert Quinnette,<br><br>      Plaintiff,<br><br>v.<br><br>Trans Union LLC and Quicken Loans, LLC,<br><br>      Defendants. | Civil Action No: 1:21-cv-187<br><br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL** |

**COMPLAINT SEEKING DAMAGES FOR VIOLATIONS OF
THE FAIR CREDIT REPORTING ACT**

**INTRODUCTION**

1.     The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3. Robert Quinnette ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Defendants Trans Union LLC ("TU") and Quicken Loans, LLC ("Quicken") (jointly as "Defendants"), with regard to erroneous reports of derogatory credit information and Defendants' failure to properly investigate Plaintiff's dispute.

4. Defendants failed to properly investigate Plaintiff's dispute, damaging Plaintiff's creditworthiness.

5. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

6. Unless otherwise stated, all the conduct engaged in by Defendants took place in Indiana.

7. Defendants committed each of these violations knowingly, willfully, and intentionally, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

8. Unless otherwise indicated, the use of Defendant's names in this Complaint includes all agents, employees, officers, members, directors, heir, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendant named.

9. Through this Complaint, Plaintiff does not allege that any state court judgment was entered against anyone in error, and Plaintiff does not seek to reverse or modify any judgment of any state court.

## JURISDICTION AND VENUE

10. Jurisdiction of this Court arises under 28 U.S.C. § 1311 and pursuant to 15 U.S.C. § 1681 *et seq*.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that Defendant transacts business in this District and a substantial portion of the acts giving rise to this action occurred in this District.

12. Plaintiff resides in this District.

## PARTIES

13. Plaintiff is an adult individual and is "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

14. Defendant TU is a business entity doing business in the Southern District of Indiana.

15. Defendant TU's registered agent address is: The Prentice-Hall Corporation System Inc., 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204.

16. Defendant TU regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports. TU is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

17. Defendant Quicken is an entity doing business in the Southern District of Indiana.

18. Defendant Quicken's registered agent address is: CT Corporation System, 334 North Senate Avenue, Indianapolis, IN, 46204.

19. The creditor named herein, Quicken, is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

20. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

21. Plaintiff is informed and believes and thereon alleges that all acts of corporate employees as hereinafter alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

22. Plaintiff is informed and believes and, on that basis, alleges that at all times mentioned herein each Defendant was the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which each respective Defendant is liable to Plaintiff or the relief prayed for herein.

## FACTUAL ALLEGATIONS

26. On or about September 5, 2013, Plaintiff incurred a debt for a mortgage on his home (the "Debt").

27. Quicken acted as a servicer on the Debt and assigned it an account number beginning in 8673 (the "Account").

28. On or about April 18, 2016, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana. Plaintiff's case was assigned Case Number 16-02856-JMC-13 (the "Bankruptcy").

29. Plaintiff's obligations to Quicken were excluded from the Bankruptcy and Plaintiff continued to pay Quicken directly.

30. Plaintiff performed his obligations to Quicken in accord with the original contractual terms of the Debt.

31. Plaintiff's bankruptcy was closed on July 21, 2020.

32. It is illegal and inaccurate for Defendants to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court.

33. However, Defendants either reported or caused to be reported inaccurate information after the Bankruptcy as discussed herein.

34. Additionally, Defendants' reporting of the Account was materially misleading.

35. A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about what otherwise may be factually accurate data. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

### *The Impact of Inaccurate or Misleading Information on Consumer Reports*

36. A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

    i. credit or insurance to be used primarily for personal, family, or household purposes;

    ii. employment purposes; or

    iii. any other purpose authorized under section 1681b.

37. As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

*38.* A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, Experian, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. *See*

https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

39. The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

*Credit Scoring*

40. The Fair Isaac Corporation credit risk scoring system, also known as "FICO", is a ubiquitous credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/ .

41. Defendants' inaccurate and/or materially misleading reporting has caused Plaintiff to suffer from reduced FICO credit scores.

42. The Fair Isaac Corporation uses the data in consumer reports to calculate credit scores that it assigns to consumers.

43. The term "credit score" is a numerical value or a categorization used to predict the likelihood of certain credit behaviors, including default. *See* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

44. FICO scores are calculated from credit data in a consumer's credit report that are arranged in five main categories. Those categories are identified and weighted as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of

        accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

45. Payment history is typically weighted as the most important aspect of a consumer's overall credit score because it shows how the consumer has managed their finances, including: any late payments, how long the consumer has been managing their accounts, when their last payments were made, and any recent charges. *See, e.g.,* https://www.transunion.com/credit-score.

46. A consumer's credit score impacts that consumer's cost of credit (e.g., interest rates, fees, etc.), availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extend financing periods, lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines.

47. Inaccurate or incorrect credit reporting often results in a lower FICO (and other credit scoring model) scores, thus creating higher costs of credit for the consumer, diminished opportunities, and less purchasing power.

48. Here, incorrectly reporting Plaintiff's Account as included in bankruptcy, with no balance or payment information on recent months—when the Account was in fact kept out of the Bankruptcy and was paid as agreed—adversely affects Plaintiff's FICO score, as it excludes any recent positive payment history associated with the Account and it alters the age/length of credit history, and the mix of accounts/types.

49. There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score; *i.e.*, a one-point change in credit score that moves the consumer from one risk

tier to the next may have a large impact on the consumer's ability to receive credit, the type of credit, or rates of that credit that a consumer may receive.

50. Consistent with the FTC Study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/.

### *TU and Quicken's Reporting of the Account on the TU Credit Report*

61. In Plaintiff's credit report from TU dated September 16, 2020 (the "TU Credit Report"), TU and Quicken failed to report accurate information regarding the Account.

62. Plaintiff made all of his payments to Quicken on time and on a regular monthly basis.

63. Due to the Account not being included in Plaintiff's Bankruptcy, TU and Quicken should have reported all of Plaintiff's recent payments in the payment history section of his Quicken tradeline.

64. Instead, TU and Quicken omitted all payment data from May 2016 through June 2020.

65. Plaintiff was denied all positive reporting of his payment history to Quicken as a result.

66. It was inaccurate and/or materially misleading for TU and Quicken to report that the Account did not have any payment history from May 2016 through June 2020.

### *Plaintiff's Dispute and Defendants' Investigations*

72. On or after October 15, 2020, Plaintiff disputed TU's reporting regarding the Account pursuant to 15 U.S.C. § 1681i by notifying TU, in writing, of the incorrect and/or materially misleading credit information.

73. Specifically, Plaintiff sent a letter to TU requesting that TU and Quicken update his credit report to reflect his on-time payments to Quicken.

74. Plaintiff explicitly noted that the Account was a direct pay, that Plaintiff made payments on time and directly to Quicken, and that the Account was not discharged in the Bankruptcy.

75. TU was required to conduct an investigation into the Account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

76. TU was required to send notice of Plaintiff's dispute to Quicken, pursuant to 15 U.S.C. § 1681i(a)(2).

77. Upon information and belief, TU notified Quicken of Plaintiff's dispute.

78. Upon information and belief, Quicken received notice of Plaintiff's dispute as to the reporting of the Account on the TU Credit Report.

79. A reasonable investigation by TU would have indicated that it was reporting the Account inaccurately and/or in a materially misleading way on the TU Credit Report.

80. TU failed to conduct a reasonable investigation despite notice of the inaccurate and/or materially misleading information on Plaintiff's TU Credit Report from Plaintiff's dispute letter to TU.

81. A reasonable investigation by Quicken would have indicated that it was reporting the Account inaccurately and/or in a materially misleading way on Plaintiff's TU Credit Report.

82. Quicken failed to conduct a reasonable investigation despite receiving regular monthly payments from Plaintiff on the Account and receiving notice of the inaccurate and/or materially misleading information on Plaintiff's TU Credit Report from Plaintiff's dispute letter to TU.

83. Instead, Quicken re-reported the Account inaccurately and/or in a materially misleading way to TU.

84. TU re-reported the Account inaccurately and/or in a materially misleading way as well.

### *TU and Quicken's Continued Inaccurate and/or Materially Misleading Reporting of the Account after Plaintiff's Dispute*

104. On TU investigation results dated October 21, 2020 ("TU Investigation Results"), TU and Quicken failed to accurately report recent payment on the Account.

105. Instead, on the TU Investigation Results, TU and Quicken made matters worse by inaccurately reporting that Quicken Account's pay status was "Account Included in Bankruptcy".

106. TU and Quicken reported this inaccurate and/or materially misleading information despite Plaintiff's notes to the contrary in his dispute that he made direct payments to Quicken and that the Account was not discharged in bankruptcy.

107. TU and Quicken also inaccurately reported in the Remarks section of the tradeline: "CHAPTER 13 BANKRUPTCY" on the TU Investigation Results.

108. TU and Quicken did not report any balance information or historical payment information on the Account in the TU Investigation Results.

109. On a TU Credit Report dated November 3, 2020, the Account still reported that the Account was in a Chapter 13 Bankruptcy, had no balance information, or recent payment information.

110. TU and Quicken's reporting was inaccurate and/or materially misleading because the Account was not included in the Bankruptcy or discharged; rather, it was excluded from Plaintiff's Bankruptcy and Plaintiff directly paid Quicken.

111. Quicken's failures were egregious in that Quicken received notice of the inaccurate reporting on the TU Credit Report and had received regular monthly payments from Plaintiff toward the Account, yet Quicken affirmed the inaccurate reporting of the Account

to TU and caused the Account to further report inaccurately and/or in a materially misleading way.

112. TU's failures were particularly noteworthy in that: (1) TU received notice of the inaccurate reporting on the TU Credit Report through Plaintiff's dispute letter that explicitly noted that the Account was directly paid by Plaintiff and not discharged in the Bankruptcy, and (2) had access to Plaintiff's publicly accessible Bankruptcy documents, yet TU caused the Account to further report inaccurately and/or in a materially misleading way.

### *Defendants' Failures and Plaintiff's Damages*

117. Reporting an account was "included in bankruptcy" has no meaningful difference from reporting that an account was "discharged in bankruptcy"—that is, the phrases are viewed as having the same meaning.  *See Diaz v. Trans Union, LLC*, No. 1:18-cv-01341-DAD-EPG, 2019 U.S. Dist. LEXIS 95549, at *7 (E.D. Cal. June 5, 2019) ("Indeed, many courts considering this very issue have concluded that '[t]here is no meaningful difference between the phrase `included in bankruptcy' and the phrase 'discharged in bankruptcy.'") (citing *Butler v. Equifax Info. Servs., LLC, No*. 5:18-cv-02084-JGB-SHK (C.D. Cal. Apr. 3, 2019); *Smith v. Trans Union, LLC*, No. 2:18-cv-13098-GCS-SDD (E.D. Mich. May 10, 2019); *Fleming v. Trans Union, LLC*, No. 2:18-cv-9785-PA-PLA (C.D. Cal. March 8, 2019).

118. It is inaccurate and/or materially misleading to report an account was included in bankruptcy when the account was not included in a chapter 13 plan or discharged in bankruptcy.

119. Reporting an account was included in bankruptcy is inaccurate and/or materially misleading when Plaintiff is in fact making direct payments on the account to the account holder.

120. Failing to report positive payment history gives an inaccurate and/or materially misleading impression of a consumer's credit history on an account.

121. Reporting that an account was included in bankruptcy is detrimental to a consumer's credit reputation.

122. As evidenced by TU's failure to report accurate information and actually add additional inaccurate information on Plaintiff's Account despite receiving knowledge of the recent payments on the Account and non-bankruptcy status of the Account, as well as having access to Plaintiff's publicly available bankruptcy information, TU failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

123. As evidenced by the inaccurate and/or materially misleading re-reporting after Plaintiff sent Defendants a detailed dispute identifying the inaccurate information related to Plaintiff's Account, Defendants, upon receipt of Plaintiff's dispute, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

124. Defendants failed to review all relevant information provided by Plaintiff in the dispute to Defendants, as required by and in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

125. Due to Defendants' failure to reasonably investigate, Defendants further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b), thereby causing continued reporting of inaccurate and/or materially misleading information in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

126. Defendants' continued inaccurate and/or materially misleading reporting on the Account in light of their knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

127. Reckless disregard of a requirement of the FCRA qualifies as a willful violation of the FCRA within the meaning of § 1681n(a). *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007).

128. Based upon Defendants' knowledge of the active status of the Account and Quicken's continued acceptance of Plaintiff's payments during the Bankruptcy and after, even if Defendants could claim they did not willfully violate the FCRA, their conduct was at the very least done with reckless disregard of their obligations under 15 U.S.C. § 1681e(b), and/or 15 U.S.C. § 1681i, and/or 15 U.S.C. § 1681s-2(b).

129. Defendants' continued inaccurate and/or materially misleading reporting has caused Plaintiff to suffer actual damages, including, without limitation: fear of credit denials, out-of-pocket expenses in challenging Defendants' inaccurate and/or materially misleading reporting, damage to Plaintiff's creditworthiness, damage to Plaintiff's credit reputation, and emotional distress.

130. By reporting inaccurate and/or materially misleading account information, Defendants' acts and omissions have resulted in the illegitimate suppression of Plaintiff's FICO credit score and other credit rating model scores.

131. The adverse effect on Plaintiff's credit score places Plaintiff at the material risk of being denied credit or receiving less favorable credit terms than he otherwise would.

132. Defendants' actions and omissions have caused Plaintiff's credit report to falsely indicate that the Account was included in bankruptcy and/or discharged in bankruptcy, thereby

denying Plaintiff the positive effect of the reporting of his payments on the Account over the course of his Bankruptcy.

133. Creating the false impression of the Account being discharged in Bankruptcy with months of no payment history creates a material risk that Plaintiff would be denied credit, receive less favorable credit treatment than Plaintiff otherwise would, or receive other unfavorable treatment than Plaintiff otherwise would, from any viewer of Plaintiff's TU credit reports that is engaged in judgment-based lending.

134. By reporting inaccurate and/or materially misleading account information after notice and confirmation of their errors, Defendants failed to take the appropriate measures as required under 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

## FIRST CAUSE OF ACTION
### The Fair Credit Reporting Act
### 15 U.S.C. §1681 *et seq*. (FCRA)

133. Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs.

134. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA.

135. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from Defendants.

136. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or statutory damages of not less than $100.00 and not more than $1,000.00, pursuant to 15 U.S.C. §1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. §1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681n(a)(3) from Defendants.

## REQUEST FOR A JURY TRIAL

137. Plaintiff is entitled to, and demands, a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

1. A declaratory judgment that Defendants' actions as discussed herein are unlawful;

2. Plaintiff's actual damages;

3. Statutory damages of not less than $100 and not more than $1,000.00 to Plaintiff, pursuant to 15 U.S.C. § 1681n(a)(1), against each Defendant;

4. Punitive damages against each Defendant, pursuant to 15 U.S.C. §1681n(a)(2);

5. An award of costs of litigation and reasonable attorneys' fees against each Defendant, pursuant to 15 U.S.C. § 1681o(a)(2) or 15 U.S.C. § 1681n(a)(3); and

6. Any other relief the Court may deem just and proper.

Dated: January 22, 2021

Respectfully Submitted,

By: /s/Richard J. Shea

Richard J. Shea, Esq., # 21396-53
Sawin & Shea, LLC.
Attorneys for Plaintiff
6100 N. Keystone Avenue, Suite 620
Indianapolis, IN 46220
Telephone: (317) 255-2600
Facsimile: (317) 255-2905
E-mail: rshea@sawinlaw.com